IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Robert Allen (N-03705), | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18 C 6369 |
| | ) Judge John J. Tharp, Jr. |
| Darin Williams, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Robert Allen, a prisoner at Stateville Correctional Center, brings this *pro se* civil rights lawsuit, 42 U.S.C. § 1983, alleging that he was confined to a cell without working plumbing for five days and that an officer refused his request for a crisis team during this time. Defendants, Assistant Warden of Programs Williams and Lt. Kyle, have moved for summary judgment. They argue: (1) the conditions to which Plaintiff was subjected were not sufficiently serious so as to violate the Constitution; and (2) Plaintiff's claim regarding the crisis team fails because he was seen by mental health professionals during the period at issue. For the reasons that follow, the motion is granted.

**BACKGROUND**

**I.  Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citation omitted.) Local Rule

56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Because Plaintiff is proceeding *pro se*, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. No. 82.) After Plaintiff submitted a letter stating that he did not understand various documents he had received, the Court directed Defendants to send Plaintiff a more detailed Local Rule 56.2 notice that comported with the Northern District's Feb. 19, 2021, amendment to the rule. Defendants did so. (Dkt. Nos. 88, 89.)

Plaintiff's response to the motion did not comply with Local Rule 56.1. Instead, he simply remarked "Yes" or "No" to the twelve statements of fact Defendants offered in support of their motion for summary judgment, agreeing to all but one of them. (*See* Dkt. No. 92 at pg. 1.) Plaintiff also submitted a "Response to Summary Judgment Questions," the numbering of which appears to correspond to the paragraph-numbering in Defendants' Motion for Summary Judgment. (*See id.*

2

at pg. 2; Dkt. No. 79.)

Plaintiff repeatedly moved for counsel after Defendants stated their intention to move for summary judgment. The Court concluded that Plaintiff was competent to proceed on his own at this stage of the case, despite his limited education and asserted mental illness, because the case is not complex and involves conditions Plaintiff personally experienced during the days his cell allegedly was without working plumbing, as well as his interactions with Lt. Kyle, the officer from whom he requested a crisis counselor. (*See* Dkt. Nos. 74, 78.) Nonetheless, the Court observed that although it was entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished), it would generously construe Plaintiff's response and the record evidence, including Plaintiff's deposition testimony, to determine whether there was a disputed issue of material fact for trial. *See Boykin v. Dart*, No. 12 C 4447, 2014 WL 5611466, at *6 (N.D. Ill. Nov. 4, 2014) (Chang, J.) (observing that district courts often afford *pro se* plaintiffs "significant leeway in responding to summary judgment filings"). Additionally, because Defendants chiefly rely on Plaintiff's deposition as evidence, his account of the conditions he experienced is essentially undisputed. *See Bentz v. Hardy*, 638 F. App'x. 535, 536 (7th Cir. 2016) (unpublished); *see also Marmarchi v. Bd. of Trustees of Univ. of Illinois*, 715 F. App'x. 529, 533 (7th Cir. 2017) (unpublished) (emphasizing importance of *pro se* litigant "describ[ing] adequately the events about which only he would know the details.").

The Court also is mindful that failure to comply with Local Rule 56.1, or indeed to respond at all to a motion for summary judgment, does not automatically warrant judgment in favor of the moving party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The burden remains with Defendants to show they are entitled to judgment as a matter of law. *Id.* The Court will apply these standards in evaluating the evidence.

II.     **Relevant Facts**

Plaintiff, a prisoner at Stateville Correctional Center, contends that beginning on Jan. 1, 2018, he was without running water in his cell. (Defs.' SOF, Dkt. No. 80, at ¶ 1.) The problem was fixed by 6 a.m. on Jan. 6, 2018. (*Id.* at ¶ 2.) Plaintiff complained to Lt. Kyle and Sgt. Kroger about the lack of water in his cell on Jan. 1, 2018, and was told that a work order would be entered to address the problem. (*Id.* at ¶ 3.) During this time, Plaintiff testified, his toilet had feces in it and would not flush, and he did not have running water in his cell. (*See* Pl.'s Dep., Dkt. No. 83, at 24:23-25:2.)[1]  Plaintiff put a blanket over the toilet to try to limit the smell. (*Id.* at 29:4-11; *see* Dkt. No. 84 at 87:4-8.) Plaintiff had access to a bathroom during the daytime. (Defs.' SOF, Dkt. No. 80, at ¶ 4.) During the 11 p.m. to 7 a.m. shift, officers would not let him out of his cell to use the toilet. (Pl.'s Dep., Dkt. No. 83, at 41:14-16.)

Defendants assert, based on his deposition testimony, that Plaintiff had access to the showers approximately five to six times between Jan. 1, 2018 and Jan. 5, 2018. (Defs.' SOF, Dkt. No. 80, at ¶ 5.) Plaintiff disputed this in his response, but did not elaborate beyond saying "No" to this factual statement. (*See* Pl.'s Resp., Dkt. No. 92, at ¶ 5.) But Plaintiff testified that he went to the showers five or six times during the relevant period because he did not have running water in his cell. (Pl.'s Dep., Dkt No. 83, at 35:9-12; 36:13-23.) Plaintiff apparently contends he did not like showering due to mold in the showers, but he acknowledged that officers facilitated greater access to the showers during the period in which his running water was not working. (*Id.* at 37:6-17.)

---

[1] For consistency with Defendants' submission, the deposition pages are referred to by the original pagination, rather than the PDF pagination.

During the relevant time, Plaintiff had access to drinking water from the cell next door. (Defs.' SOF, Dkt. No. 80, at ¶ 6.) Plaintiff also received two meals per day in the chow hall. (*Id.* at ¶ 10[2].) Further, Plaintiff testified that inmates were allowed to go to the yard twice a week, and he had access to the yard during the relevant period. (*See* Pl.'s Dep., Dkt. No. 84, at 122:6-16; 125:16-19.) Plaintiff indicated that water was available in buckets in the yard, but he preferred to get water from next door because the buckets were not clean. (*Id.* at 88:12-21.)

Plaintiff spoke with Defendant Darwin Williams, Assistant Warden of Programs, on Jan. 2, 2018, and informed him of the problem with the plumbing in his cell. (Defs.' SOF, Dkt. No. 80, at ¶ 7.) Assistant Warden Williams told Plaintiff he would take care of it. (*Id.* at ¶ 8.) Plaintiff had a similar conversation with Assistant Warden Williams two days later. (Pl.'s Dep., Dkt. No. 84, at 91:5-8; 92:15-18.) Plaintiff faults Williams for not having the plumbing problem resolved faster. (*Id.* at 92:19-93:16.)

Part of Plaintiff's complaint concerned his allegation that during the period in which his plumbing was not working, Plaintiff asked Lt. Kyle for a crisis team "because these conditions bega[]n to cause [Plaintiff] to become mentally unstable." (Pl.'s Am. Compl., Dkt. No. 12, at 5.) Plaintiff testified that he spoke to Lt. Kyle on Jan. 2, 2018, in the cellhouse, and asked for a crisis team, but she told him she did not think he needed one. (*See* Pl.'s Dep., Dkt. No. 83, at 55:23-58:10.) Two days later, Sgt. Kroger, who witnessed his interaction with Lt. Kyle, took Plaintiff to see a crisis team. (*Id.* at 59:13-23.) Plaintiff testified that he has been diagnosed with bipolar disorder. (*Id.* at Dkt. No. 84, 97:23-98:1.) He further testified that during the relevant time period,

---

[2] The citation for this statement of fact appears incorrect. But Plaintiff did not dispute this fact and testified that inmates went to the chow hall twice a day for lunch and dinner. (Pl.'s Dep., Dkt. No. 84, at 123:6-13.)

5

he was receiving mental health treatment for an unrelated issue. (*See id.* at 80:10-81:17; *see also* Defs.' SOF at ¶ 11.) Plaintiff told the mental health professional that he spoke to about that issue that he was stressed about his living conditions. (*See id.* at 81:2-17.)

Plaintiff testified that his injuries as a result of the five-day plumbing problem were stress and stomach issues from the smell. (Defs.' SOF at ¶ 9.; *see* Pl.'s Dep., Dkt. No. 84, at 98:15-99:4.) He received antacids from a nurse. (*Id.* at 99:13-22.) Plaintiff filed a grievance about his conditions of confinement on Jan. 6, 2018, the day the problem was resolved. (Defs.' SOF at ¶ 12.)

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by "the mere existence of *some* alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992). A genuine issue of material facts exists when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d

561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). Thus, "summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) (quoting *Celotex*, 477 U.S. at 322 (1986)); *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

When deciding a motion for summary judgment, the Court does not weigh the evidence, judge credibility, or determine the truth of the matter, but rather determines only whether a genuine issue of fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court must construe all facts in the light most favorable to the nonmoving party and resolve all doubts in favor of that party. *Id.*

### II. Analysis

The Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement . . . [that include] . . . adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a colorable claim based on allegedly unconstitutional prison living conditions, a plaintiff must allege facts indicating that: (1) there was a deprivation that was objectively serious enough that it resulted "in the denial of 'the minimal civilized measure of life's necessities,'" and (2) prison officials were deliberately indifferent to the deprivation. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834).

"[F]acilities to wash and use the toilet are among the 'minimal civilized measure of life's necessities." *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (quoting *Rhodes v.*

*Chapman*, 452 U.S. 337, 347 (1981)). Similarly, "the right to water for drinking and personal sanitation, and the right to live in an environment free of accumulated human waste is clearly established." *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). That said, the Court must consider the severity and duration of the conditions experienced by the prisoner in determining whether they implicate the Constitution. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). In *Hardeman*, for example, the Seventh Circuit observed, "A single clogged toilet does not violate the Constitution, and prisoners are not entitled to Fiji Water on demand. But on the other end of the spectrum, a defendant cannot purposefully deny water until a prisoner is on the brink of death or force a prisoner permanently to live surrounded by her own excrement and that of others." *Id.* at 823–24; *see also DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.") (internal quotation and citation omitted). In assessing this type of claim, courts focus on "access to alternative bathroom facilities and the conditions of the cell as a result of the non-functioning toilet." *Clay v. Johnson*, No. 16-cv-05748, 2020 WL 1304628, at *4 (N.D. Ill. Mar. 19, 2020) (Wood, J.).

In regard to cell conditions, the Seventh Circuit has held that long-term or extreme exposure to human waste, particularly when combined with other conditions such as a lack of running water, may violate the Eighth Amendment. *See, e.g., Thomas v. Blackard*, 2 F.4th 716, 720–21 (7th Cir. 2021) (plaintiff's assertions of "feces-covered walls, a lack of hot water, hundreds of dead flies in his bed, and a mattress covered in human waste" were sufficient to raise a question of fact as to whether conditions violated the Constitution); *Cobian v. McLaughlin*, 717 F. App'x.

605, 611 (7th Cir. 2017) (unpublished) (allegations that prisoner was placed for a month in segregation cell with feces "splashed . . . everywhere" and without adequate cleaning supplies stated a claim under the Eighth Amendment); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (reversing summary judgment where prisoner complained he was forced to remain for six days in cell without working toilet or running water and with feces and blood smeared on walls).

By contrast, shorter or less serious deprivations do not violate the Constitution. *See, e.g., Mays v. Emanuele*, --- F. App'x. ---, 2021 WL 2935374, at *1 (7th Cir. July 13, 2021) (unpublished) (summary judgment proper on Fourteenth Amendment claim where inmate had to remain in cell with overflowed toilet for an hour until a plumber and cleaning crew could be summoned); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (cell conditions including foul odor from plumbing were "certainly unpleasant" but did not rise to the level of a constitutional violation).

Here, taking the evidence in the light most favorable to Plaintiff, the cell conditions he describes fall short of a constitutional violation. Plaintiff testified that the inoperable toilet caused him stress and stomach upset from the smell, but he was able to cover the toilet with a blanket. It appears the waste was confined to the toilet; there is no evidence that the toilet was overflowing. The situation Plaintiff describes is certainly distasteful, but "extreme deprivations are required to make out a conditions-of-confinement claim." *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) (internal citation and quotation omitted); *see also Dixon*, 114 F.3d at 642 ("Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment.").

In analogous circumstances, courts have found that foul odors from a clogged toilet did not amount to a constitutional deprivation. *See, e.g., McCord v. Ruiz*, No. 18-C-1311, 2020 WL

5877684, at *5 (E.D. Wis. Oct. 2, 2020) (Griesbach, J.) (exposure to waste in non-functioning toilet for about 36 hours did not violate Constitution); *Ball v. Korte*, No. 16-3063, 2018 WL 1370860, at *2 (C.D. Ill. Mar. 16, 2018) (Myerscough, J.) (confinement for 90 days in cell with faulty plumbing that caused waste from adjacent cell to come into plaintiff's toilet was not sufficiently serious deprivation); *Akindele v. Arce*, No. 15 C 5952, 2017 WL 467683, at *4 (N.D. Ill. Feb. 3, 2017) (Feinerman, J.) (plumbing malfunction did not implicate Constitution where inoperable toilet was covered with a towel and inmate was able to clean up small amount of waste that spilled onto floor). The Court recognizes that the Seventh Circuit recently held that a pretrial detainee stated a claim where he alleged that due to a broken pipe, he had no access to water or a toilet outside his cell for six days. *Bell v. Dart*, 807 F. App'x. 562, 564 (7th Cir. 2020) (unpublished). In that instance, however, the plaintiff was a pretrial detainee, and pretrial detainees cannot be punished at all without due process. *Id.; see Hardeman*, 933 F.3d at 821–22. Further, in *Bell*, the appeals court was considering the allegations at the pleading stage, and Plaintiff alleged that the officers to whom he complained did not arrange for bottled water or access to a working toilet. 807 F. App'x. at 563. The appeals court observed, "The district court assumed that Bell may have had access to water and a toilet outside his cell at some point during the six days. But this is an inference that it drew in favor of the defense; Bell alleges *no* water for six days, and at this stage we must draw all fair inferences in his favor, not against him." *Id.* at 564 (emphasis in original). Here, the Court has the benefit of a more developed record, which shows that the conditions Plaintiff experienced were not so serious as to implicate the Constitution.

In allowing Plaintiff to proceed on his amended complaint, the Court found it significant that Plaintiff had alleged that he was confined in his cell for 23 hours a day, which the Court observed may have limited his access to alternative bathroom facilities or sources of water. (*See*

Dkt. No. 11 at pg. 4.) But the record did not bear this out. Rather, his deposition testimony showed that Plaintiff had adequate access to alternative bathroom facilities, as well as adequate water for drinking and to maintain hygiene. As to the first issue, Plaintiff does not dispute that he had access to a bathroom except for during the overnight shift. (*See* Pl.'s Dep., Dkt. No. 83, at 41:20-42:5.) As to the second, Plaintiff received water from the cell next door as well as lunch and dinner in the chow hall. (*See id.* at Dkt. No. 84, 87:23-88:11.;123:9-13.) The only factual assertion with which Plaintiff disagreed was the assertion that he had access to the showers about five to six times during the relevant period. (*See* Defs.' SOF, Dkt. No. 80, at ¶ 5; Pl's "Answers to Material Facts Questions," Dkt. No. 92, at ¶ 5). But Plaintiff does not explain why he disagrees with this assertion, which is taken from his deposition testimony. (*See* Pl.'s Dep., Dkt. No. 83, at 35:9-12.) Ordinarily, a litigant may not contradict his own deposition testimony, even by affidavit, unless he explains the contradiction. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571–72 (7th Cir. 2015). Regardless, there is no evidence in the record that Plaintiff was unable to maintain hygiene during the period in which the plumbing in his cell was broken. Under such circumstances, summary judgment is proper for Defendants. *See Akindele*, 2017 WL 467683, at *4 (finding broken plumbing was not constitutional deprivation where no evidence suggested plaintiff was unable to maintain basic personal hygiene); *see also Perez v. Hardy*, No. 13 C 5635, 2015 WL 5081355, at *5 (N.D. Ill. Aug. 27, 2015) (Feinerman, J.) (short-term plumbing breakdown "does not rise to the level of an Eighth Amendment violation under circumstances where the inmate is otherwise provided with food, beverages, and access to showers and a toilet."); *Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *9 (N.D. Ill. June 5, 2013) (Kendall, J.) (45-day breakdown of cell sink did not support constitutional claim where prisoner had access to beverages as part of regular meal schedule and

11

other sources). For these reasons, summary judgment is granted in favor of Defendants as to the conditions-of-confinement claim.

As to the claim that Plaintiff was denied a crisis team, Defendants first argue that Plaintiff was not actually in need of crisis intervention when he spoke to Lt. Kyle, and "attempted to abuse a system that was implemented for serious emergency mental health situations." (*See* Mem. of Law in Supp. of Defs.' Mot. for Summ. J., Dkt. No. 81, at 12.) But while Defendants supplied a copy of the Illinois Department of Corrections' administrative directive concerning suicide prevention and intervention and emergency services, *see* Dkt. No. 81-3, none of their statements of fact support an argument that Plaintiff's request was an attempt to abuse the system. Further, Defendants have not presented an affidavit from Lt. Kyle or any other evidence as to why she declined to call a crisis team.

Nonetheless, summary judgment as to this claim is warranted because, as Defendants also argue, the record demonstrates that Plaintiff received mental health care during the relevant time period and Plaintiff has not demonstrated that any delay in receiving treatment exacerbated a serious medical condition. To survive summary judgment on his claim of deliberate indifference, Plaintiff had to present evidence of "an objectively serious medical need that a defendant correctional officer responded to with deliberate indifference, thereby resulting in some injury." *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020). Plaintiff testified that the cell conditions caused him stress, and submitted with his amended complaint an affidavit from his cellmate to that effect. (*See* Dkt. No. 12 at 23; Pl.'s Dep., Dkt. No. 84, at 98:15-18.) It is understandable that the plumbing malfunction described, even though it falls short of violating the Constitution, would cause Plaintiff stress. But Plaintiff has not presented any evidence that his stress was so severe that it amounted to a serious medical need and an immediate mental health evaluation was warranted

12

after being exposed to these cell conditions for one day. Plaintiff's own testimony indicated that he saw a crisis team two days later, and that he also was able to discuss the cell conditions with a mental health professional he was seeing for an unrelated issue. (*See* Pl.'s Dep., Dkt. No. 83, at 59:13-23; Dkt. No. 84, 80:10-81:17.)

Plaintiff did testify that he is diagnosed with bipolar disorder, which is a serious medical condition. But in cases where prison officials are accused of delaying medical care, the plaintiff must offer "verifying medical evidence" that the delay, rather than the underlying condition, caused some degree of harm. *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015). This principle applies to mental health treatment. *See Green v. Shannon-Sharpe*, No. 11-CV-816, 2013 WL 5137537, at *5 (W.D. Wis. Sept. 13, 2013) (Crocker, M.J.) (granting summary judgment to defendant crisis intervention worker where there was no evidence that prisoner plaintiff suffered from a medical condition that worsened because of worker's half-day delay in treatment); *Vitrano v. Lindsey Hauck*, No. 10-CV-0800, 2013 WL 1308642, at *8 (E.D. Wis. Mar. 27, 2013) (granting summary judgment where there was no evidence that brief interruption in psychiatric medication led to a serious health risk). Similarly, here, there is no evidence that the delay in mental health counseling put Plaintiff at serious risk of harm. Rather, it appears based on his deposition testimony that Plaintiff believes his rights were violated because a law required Lt. Kyle to get him a crisis team upon his request. (*See* Pl.'s Dep., Dkt. No. 83, at 56:14-21.) But Plaintiff did not specify to what law he was referring, and regardless, a violation of a state law or prison policy, in and of itself, does not violate the Constitution. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) (explaining that Section 1983 "protects plaintiffs from constitutional violations, not violations of state law or . . . departmental regulations"). So, summary judgment is properly granted as to Lt. Kyle on this claim.

**CONCLUSION**

For these reasons, Defendants' motion for summary judgment [79] is granted. Final judgment will be entered. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until

the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date: 8/5/2021     /s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge